Maureen **STOREY**, Plaintiff,

v.

**BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM and Milton L. Sunde, Defendants.**

**No. 84–C–250–D.**

United States District Court,
W.D. Wisconsin.

March 26, 1985.

Michael Fox, Fox Law Offices, Madison, Wis., for plaintiff.

Diane M. Nicks, Asst. Atty. Gen., Bronson C. LaFollette, Atty. Gen., State of Wisconsin, Madison, Wis., for defendants.

## AMENDED OPINION AND ORDER

JAMES E. DOYLE, District Judge.

Plaintiff alleges that in denying her appointment as an assistant professor in the University of Wisconsin-Madison Department of Poultry Science, defendants intentionally discriminated against her because of her sex. She invokes Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII); 42 U.S.C. § 1983; and Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681 *et seq.* (Title IX). Defendants moved under Fed.R.Civ.P. 12(b)(6) to dismiss the § 1983 and Title IX claims on the ground that Title VII is plaintiff's exclusive remedy. In a previous order I denied defendants' motion to dismiss the § 1983 claim. *Storey v. Board of Regents of Univ. of Wis. System,*

600 F.Supp. 838 (W.D.Wis.1985). I now address the viability of plaintiff's Title IX claim.

## OPINION

As I concluded in my earlier opinion in this case, because Title VII pre-dates Title IX, it is presumed Title VII preempts Title IX when the discriminatory conduct at issue is prohibited by Title VII. *Id.* at 842. I infer Congress intended to make Title VII a nonexclusive avenue of relief only with regard to remedies already in existence or to subsequently created remedies Congress expressly or by clear implication made available to victims of discrimination in employment. Plaintiff asserts that Title IX expressly accords her just such a new remedy, namely, the ability to obtain the termination of federal funds to the University of Wisconsin.[1] Plaintiff also contends Title IX implicitly empowers this court to grant her injunctive and monetary relief, by ordering defendants to install her in the position she was denied and to relinquish full back-pay with interest. I conclude otherwise.

■ The essence of Title IX is that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. It is settled that this prohibition reaches dis-

---

**1.** "Remedy" is something of a misnomer. Cutting off funds does nothing to make victims of discrimination whole. Except as a general deterrent mechanism, it does not curtail ongoing discrimination. Unlike punitive damages, termination bestows no tangible reward on individual victims. If remedial, it is only in the sense that termination removes the evil of providing government funds to discriminatory programs. From this perspective, members of the national community have equal interest. If victims' lawsuits could trigger termination, victims of discrimination might be better able to induce discriminators to cease discrimination and to make victims whole, but labelling termination a "remedy" stretches the concept. Nonetheless, like others, I will speak of termination as a remedy.

Plaintiff appears to concede that in light of *Grove City College v. Bell,* ___ U.S. ___, 104 S.Ct.

1211, 79 L.Ed.2d 516 (1984), any termination of Title IX funds would be limited to the specific program involved in the discrimination. All of the discriminatory acts alleged in the complaint occurred entirely within the Department of Poultry Science, which is a component of the College of Agriculture and Life Sciences. While it seems clear that based on these facts termination of funds for the entire University of Wisconsin-Madison, much less for the entire statewide University of Wisconsin system, would be impermissible, given my decision below there is no need to address what the relevant program is for termination purposes. Similarly, there is no need to decide whether an isolated incident involving sex discrimination would justify the termination of all federal funds to the program in question.

crimination in the employment context. *North Haven Board of Education v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). The only explicit means of enforcing § 1681 appears in § 1682, which provides for the termination of federal funds to recipients by federal departments and agencies.[2] Section 1683 provides that "any person aggrieved" by actions terminating or withholding funds under § 1682 may obtain judicial review.

Title IX is silent as to remedial mechanisms other than the administrative termination of funds. Whether it implies a private right of action for a victim of sex discrimination in the context of employment is the open question raised by defendant's motion in the present case. In certain contexts other than discrimination in employment, it is settled that Title IX does imply a private right of action by an individual, but even in those contexts it appears that Title IX does not imply the availability of direct judicial termination of federal funds in a suit by a private litigant.[3]

In *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), plaintiff alleged the defendant medical schools had denied her applications for admission on account of her sex. In concluding Congress intended Title IX to create a private right of action by that plaintiff, the Court relied on the express modeling of Title IX after Title VI of the Civil Rights Act of 1964, which courts had interpreted as embodying an implied private right of action. *Id.* at 694–96, 99 S.Ct. at 1956–57. Further, dual purposes underlay the enactment of Title IX: (1) "to avoid the use of federal resources to support discriminatory practices" and (2) "to provide individual citizens effective protection against those practices." *Id.* at 704, 99 S.Ct. at 1961. The termination procedure spelled out in the statute serves the first purpose, but without a private right of action, the Court stated, it would be impossible to effectuate fully the second purpose. The termination of funds is a cumbersome, costly, and extreme sanction intended to be a remedy of last resort; it is ill-suited to redress isolated instances of discrimination against individuals. *Id.* at 704–706, 99 S.Ct. at 1961–1962. Accordingly, the Court held that to fulfill the purposes of Title IX it was necessary to infer a private right of action.

In *Cannon,* plaintiff initially had sought injunctive, declaratory, and monetary relief. *Cannon v. University of Chicago,* 406 F.Supp. 1257 (N.D.Ill.1976). The Court did not address which of those remedies

2. Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity ... is authorized and directed to effectuate the provisions of section 1681 ... by issuing rules, reegulations, or orders of general applicability .... Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement .... *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. In the case of any action terminating, or refusing to grant or continue, assistance because of failure to comply with a requirement imposed pursuant to this section, the head of the Federal department or agency shall file

with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report.
20 U.S.C. § 1682.

3. Plaintiff contends that the existence of a private right of action is meaningless unless individuals can seek termination of funds. In *Guardians Assn. v. Civ. Serv. Com'n of City of N.Y.,* —— U.S. ——, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), the Court makes clear that equitable relief is available in a private action under Title VI, and thus by implication Title IX, and its opinion suggests that an award of money damages might be appropriate in a private suit involving intentional discrimination. When injunctive, declaratory, and perhaps monetary relief are available in private suits under Title IX, even to a narrow category of plaintiffs, it can hardly be said that the Title IX private right of action is meaningless.

might be available to her, if she proved up her allegations. However, it strongly suggested that funding termination is not a remedy available to private plaintiffs. In its exposition of the legislative history of Title VI, the Court noted there was explicit debate whether individuals should possess the ability to obtain funding termination. *See Cannon, supra*, 441 U.S., at 710, n. 46, 99 S.Ct. at 1964, n. 46 (citations omitted).

> With one set of exceptions, the excerpts from the legislative history cited by respondents as contrary to implication of a private remedy under Title VI, were all concerned with a procedure for terminating federal funding. None of them evidences any hostility toward an implied private remedy to terminate the offending discrimination. They are consistent with the assumption expressed frequently during the debates that such a judicial remedy ... would be available to private litigants regardless of how the fund-cutoff issue was resolved.

*Id.* at 711–12, 99 S.Ct. at 1965–66.

The one set of exceptions referred to springs from a comment by Senator Keating, who had proposed unsuccessfully express creation of private remedies, and authorization of individuals to seek the termination of funds. *Id.* at 713–14, n. 50, 99 S.Ct. at 1966–67, n. 50. The Court interpreted the rejection of Senator Keating's proposal not as a rejection of all private remedies, but rather as a compromise under which private remedies other than termination were sanctioned:

> [The enacted version] was far more conducive to implication of a private remedy against a discriminatory recipient than was the original language, but at the same time was arguably *less* conducive to implication of a private remedy against the Government (as well as the recipient) to compel the cutoff of funds. Although willing to extend private rights against discriminatory recipients, the Government may not have been anxious to encourage suits against itself.

*Id.* at 716, n. 51, 99 S.Ct. at 1967, n. 51 (emphasis in original).

The language and structure of Title IX buttresses the conclusion that in every discriminatory context, whether it is employment or admissions or another context, Congress intended the termination process to be invoked and effected only by the federal agency. The statutory termination procedure reflects congressional concern that the power to cut off funds to recipients be used sparingly and prudently. Accordingly, § 1682 holds out termination as a sanction of last resort, permissible only after the agency has notified the recipient of the alleged violations and has determined that voluntary compliance cannot be relied upon to rectify the discrimination. Moreover, no termination is effective until thirty days after a full report of the action is submitted to the congressional committees having jurisdiction over the programs in question. 20 U.S.C. § 1682. A carefully crafted and rather cumbersome statutory mechanism to ensure cautious use of the termination sanction, on the one hand, and, on the other, authorization to individuals to obtain termination in private suits are incongruous. *See Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (refusing to permit individuals to bypass administrative enforcement mechanism by seeking judicial remedy). That § 1682 on its face refers only to federal departments and agencies is strong evidence Congress intended that no other parties could seek such a remedy.

*Cannon* lends strong support to the view that § 1682 permits only governmental executive officers or agencies to terminate funding:

> [The Supreme Court] has never withheld a private remedy where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute.... As the government itself points out in this case, Title IX not only does not provide such a mechanism, but the complaint procedure adopted by HEW does not allow the complainant to participate in the investiga-

tion or subsequent enforcement proceedings. Moreover, even if those proceedings result in a finding of a violation, a resulting voluntary compliance agreement need not include relief for the complainant.... Furthermore, the agency may simply decide not to investigate—a decision that often will be based on a lack of enforcement resources, rather than on any conclusion on the merits of the complaint.... In that case, if no private remedy exists, the complainant is relegated to a suit under the Administrative Procedure Act to compel the agency to investigate and cut off funds.

*Cannon, supra,* 441 U.S., at 707, n. 41, 99 S.Ct. at 1963, n. 41.

■ As reflected in the opinion of the Court in *Cannon,* seeking to remedy specific instances of discrimination and make specific victims whole is to be contrasted with ensuring government funds are not used to foster or support discriminatory programs or institutions. I conclude that Title IX contemplates two separate means to enforce its antidiscrimination directive:

(1) private suits to redress instances of certain forms of discrimination against individuals, and (2) an administrative termination mechanism to avoid federal support of pervasively discriminatory programs. Aggrieved individuals are free to complain to the Department of Education and seek administrative action under § 1682, as the employees did in *North Haven Board of Education v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299.[4] If unsuccessful, possibly they may seek judicial review of the agency's inaction under the Administrative Procedure Act. *Cannon, supra,* 441 U.S., at 707, n. 41, 99 S.Ct. at 1963, n. 41. But individuals are not authorized by Title IX to seek district court judgments directly terminating funds.[5]

Termination of funds is not the only remedy plaintiff seeks under Title IX. She also requests an order directing that she be hired as an assistant professor, and that she receive full back-pay with interest. Had the alleged discrimination occurred in a context other than employment, precedent would support plaintiff's ability to

4. In *North Haven,* the disputants were two school districts and the United States Department of Education, which had threatened to terminate the districts' federal funds unless they corrected discriminatory employment practices. Complaints by aggrieved employees of the districts had prompted the Department to investigate the districts' practices, but the individual employees were not parties to the lawsuits. I interpret *North Haven* as permitting a recipient institution to bring suit to prevent termination of its federal funds on the basis of alleged discriminatory practices. ·I do not interpret it to permit an individual who alleges discrimination to obtain judicial termination of federal funds for the recipient institution by by-passing the vital role of the Department of Education in determining whether federal funds should be withheld from the recipient institution.

5. I note the difficulties posed by *Hills v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976), in which the Court affirmed a broad district court injunctive remedy that included the termination of federal housing funds unless certain court-imposed conditions were met. At some level *Hills* may be irreconcilable with *Cannon,* although there are a number of relevant differences between the two cases: (1) in *Hills* the funding agency (HUD) was named as a defendant, and was alleged not merely to have provided federal funds to an entity which prac-

ticed discrimination in the course of administering its activities, but to have itself directly engaged in discriminatory actions in the administration of the funded program; (2) in *Cannon* the Court directly addressed the question whether Congress intended the termination sanction to be available to individuals, whereas from the various opinions throughout the course of the *Hills* litigation it does not appear that the government contested the availability of termination to plaintiffs; (3) *Hills* was a class action alleging pervasive discrimination whereas in *Cannon* an individual sought redress for specific instances of discrimination; and (4) the power of the district court in *Hills* was couched in terms of the broad inherent equity powers of federal courts to rectify unconstitutional racial discrimination. In any event the Court's discussion in *Cannon* occurred three years after *Hills* and was directly applicable to Title IX.

In directly addressing the termination issue in a case preceding *Hills,* the Seventh Circuit had ruled that Title VI did not permit an individual to bypass the administrative termination mechanism by suing to enjoin the disbursement of federal housing funds. *Green Street Association v. Daley,* 373 F.2d 1, 8–9 (7th Cir.1967), *cert. denied,* 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967). *See also Organ. of Minority Vendors v. Ill. Cent. Gulf R.R.,* 579 F.Supp. 574 (N.D.Ill. 1983) (holding similar statute limits termination authority to funding agency).

seek such relief, as well as other forms of injunctive relief and possibly money damages. *Guardians Assn. v. Civ. Serv. Com'n of City of N.Y.*, — U.S. —, 103 S.Ct. 3221, 3229–30, 77 L.Ed.2d 866 (1983).

The question is whether an individual alleging employment-related discrimination may seek the remedies Title IX implicitly provides to individuals alleging non-employment related discrimination. Plaintiff has cited no case, and I have found none, in which an individual in a private suit under Title IX was permitted to litigate employment-related claims. In the reported cases involving private Title IX suits, the plaintiff typically has had no recourse to a remedial statutory scheme such as Title VII.[6] *See Cannon, supra; Lieberman v. University of Chicago*, 660 F.2d 1185 (7th Cir. 1981) (plaintiffs were denied admission to medical schools); *De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir.1978), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979) (plaintiffs challenged failure of community college district to provide day care facilities). Faced with victims of discrimination who would otherwise have been remediless, courts thus have recognized Title IX affords private remedies.

Plaintiff is not remediless. She is fully capable of pursuing her claim under Title VII, not to mention § 1983. As I previously decided, Congress intended Title VII to preempt remedies other than those in existence prior to enactment of Title VII. *Storey, supra*, at 842. Of course, following enactment of Title VII, Congress has been free to provide victims of employment-related discrimination with additional remedies. It has been free to do so expressly. It has been free to do so by implication, but against the background of Title VII, its intention to do so requires a powerful implication on its part. Title IX's only express remedy is termination, which is unavailable to plaintiff. Hence plaintiff's Title IX claim will stand only if Title IX's legislative history unmistakably reveals Congress intended to bestow on victims of employment

discrimination an avenue of relief in addition to Title VII. In *Cannon* the Court found sufficient indicia of congressional intent to create a private right of action under Title IX when the absence of private remedies would have left unfulfilled a primary purpose of the act—the protection of individual victims of discrimination. Much stronger indicia than those noted in *Cannon* are required to persuade me Congress intended to imply remedies for employment-related discrimination, altering and disturbing the comprehensive and elaborate Title VII mechanism. Accordingly, I hold that in response to employment discrimination in federally funded education programs or institutions, Title IX affords no direct remedy to victims.

### ORDER

Defendants motion to dismiss plaintiff's claim under Title IX is granted.

---

**6.** Where the educational institution is private, the absence of state action will make § 1983 also unavailable to the victim of discrimination.

*See Cannon v. University of Chicago*, 559 F.2d 1063 (7th Cir.1976), *rev'd on other grounds*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).