Michael MITCHELL, Plaintiff–Appellant,

v.

Reynaldo P. GLOVER, Robert M. Weissbourd, Ronald Grzywinski, Members of the Board of Trustees of Community College District No. 508, Cook County, Illinois, et al., Defendants–Appellees.

No. 91–3284.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1993.

Decided June 8, 1993.

Rehearing and Suggestion for Rehearing In Banc Denied Aug. 9, 1993.

John M. Bowlus (argued), Chicago, IL, for plaintiff-appellant.

Christine Holtz, Sharon L. Tiller (argued), City Colleges of Chicago, Chicago, IL, for defendants-appellees.

Before CUDAHY, COFFEY, and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff, Michael Mitchell, filed an action for injunctive relief based on 42 U.S.C. § 1983 seeking to prevent the termination of his employment at Malcolm X College in Chicago, Illinois. The plaintiff alleged violations of his Fourteenth Amendment rights under the United States Constitution. Both the plaintiff and the defendants signed a "Consent to Proceed Before a United States Magistrate." On the same consent form, the plaintiff also elected to have his appeal heard by the U.S. District Court, but the defendants chose not to make that election. The Federal Rules of Civil Procedure make clear that the district court may only hear an appeal from a magistrate's decision upon consent of *all* the parties, otherwise the Court of

Appeals has jurisdiction over the appeal. Fed.R.Civ.P. 73(c).[1]

After several days of testimony, the magistrate granted summary judgment in favor of the defendants on August 22, 1991. Thereafter, the plaintiff filed a motion to reconsider which the magistrate denied on September 5, 1991. The plaintiff filed a timely appeal with the U.S. District Court on October 3, 1991, and requested the district court to hear the appeal. The district court determined that it was without jurisdiction to hear the appeal because of Rule 73 and *sua sponte* transferred the case to the court of appeals. The plaintiff filed a motion with this court requesting dismissal of the appeal and sought to have the appeal returned to the district court arguing that the consent of one party to district court jurisdiction over the appeal was sufficient. On November 4, 1991, we granted plaintiff's request for a dismissal pursuant to Fed.R.App.P. 42(b) which governs voluntary dismissals. On February 11, 1992, after briefing and oral argument in the district court, the trial court once again determined that it lacked jurisdiction over the parties as both litigants had not consented to the district court's jurisdiction over the appeal. 28 U.S.C.A. § 636(c)(4) (West Supp. 1993); Fed.R.Civ.P. 73(c). On March 26, 1992, this court granted the plaintiff's motion to Recall the Mandate and ordered the appeal of October 3, 1991, reinstated. Upon reviewing the record we affirm the magistrate's decision granting summary judgment in favor of the defendants.

## I. BACKGROUND

On August 17, 1990, Dr. Milton F. Brown, the President of Malcolm X College, called the plaintiff Michael Mitchell into his office and handed him a letter from Dr. Nelvia Brady, the Chancellor of City Colleges of Chicago. The letter explained that President Brown had recommended to the Board of Trustees that Mitchell be terminated and that Chancellor Brady was contemporaneously suspending Mitchell with pay pending Board approval of his termination. The letter failed to recite any reasons for the termination. Dr. Brown directed the plaintiff to immediately surrender all property belonging to the college including his keys. Dr. Brown notified Mitchell, who had been employed by the college since 1979 and acted as Registrar since 1982, that campus security would escort him off the premises.

On August 29, 1990, Mitchell's attorney served Brady with a letter objecting to his termination and requesting that he be advised of the reasons for his termination. On September 11th, Mitchell's attorney received a document from the counsel for the college entitled "Instances of Unsatisfactory Job Performance" setting forth three issues regarding the plaintiff's dismissal.

On September 5, 1990, prior to receiving the letter giving the reasons for Mitchell's termination, the plaintiff filed a one-count complaint in the U.S. District Court seeking a temporary restraining order (TRO) and preliminary injunction to restrain and enjoin his termination at a meeting of the Board of Trustees scheduled for September 6, 1990. The trial judge granted the plaintiff's TRO enjoining the Board of Trustees' decision to terminate Mitchell until September 13, 1990. At the same time, the district court encouraged the college officials to meet with Mitchell to inform him of the reasons for his termination. The parties agreed to meet in order to give Mitchell an opportunity to respond to the reasons set forth in the September 11th letter. On September 17th, the plaintiff, along with a court reporter and counsel, appeared at the college for their prearranged meeting. At this time, the respective counsel came to an impasse because

1. Fed.R.Civ.P. 73 provides in part:
   (c) Normal Appeal Route. In accordance with Title 28, U.S.C. § 636(c)(3), unless the parties otherwise agree to the optional appeal route provided for in subdivision (d) of this rule, appeal from a judgment entered upon direction of a magistrate in proceedings under this rule will lie to the court of appeals as it would from a judgment of the district court.

   (d) Optional Appeal Route. In accordance with Title 28, U.S.C. § 636(c)(4), at the time of reference to a magistrate, the parties may consent to appeal on the record to a judge of the district court and thereafter, by petition only, to the court of appeals.

the counsel for the college refused to hold the meeting with a reporter transcribing the proceedings; likewise the plaintiff's counsel refused to proceed without the reporter, thus the meeting was canceled. On October 4, 1990, the Board of Trustees officially terminated the plaintiff's employment with the college. Shortly thereafter, the plaintiff filed a complaint seeking reinstatement as Registrar and Director of Admissions.

The plaintiff's complaint alleges that President Brown announced at an August 20, 1990 faculty and staff meeting that Mitchell had been terminated, that he had been barred from campus, and that the locks as well as the computer access codes had been changed. The testimony of Patricia Rangel, an associate professor who was in attendance at the faculty meeting, reveals that President Brown was not the one who initially raised the issue of Michael Mitchell's termination. While President Brown was addressing the faculty, he was interrupted by union leader Tom Brezill who publicly confronted the president with an accusation that a faculty member (Lois Jean Komai) and the Registrar (Mitchell) had been barred from campus.[2] The president explained that "the only person that was barred [from campus] was Michael Mitchell." The president testified that he refused to discuss the details of Mitchell's situation whereupon Brezill called for the faculty to walk out of the meeting and shortly thereafter, a number of faculty members departed from the meeting.

Mitchell, in seeking the injunction ordering his reinstatement to his prior position, argues that he was denied due process because he has a property and liberty interest in his continued employment and reputation.

## II.  DISCUSSION

■ We review a grant of summary judgment *de novo* and consider the record in the light most favorable to the party opposing the motion. *Rizzo v. Caterpillar, Inc.,*

914 F.2d 1003, 1006 (7th Cir.1990). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" does a genuine issue of material fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### A.  Existence of a Property Interest

■ The plaintiff asserts that he was never given a hearing prior to the Board's action dismissing him from his position as Registrar. He claims that the lack of a hearing violates the principle of *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975) (requiring notice and a hearing appropriate to the nature of the case). The plaintiff has attempted to place the cart before the horse, because as a threshold matter he must initially establish that he has a property interest in his continued employment before he is entitled to a hearing. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). On appeal, the plaintiff admits that he is an "at-will employee" thus obviating the need for us to discuss in depth the existence of a property interest. The only evidence the plaintiff offered in support of his claim regarding his alleged property interest was the testimony of Walter Lynch, another Registrar in the City College system. Mr. Lynch testified that most of the Registrars "seem to be planning on being around for a while." Transcript at 5. On cross-examination, however, he acknowledged that he had neither an employment contract nor a promise of continued employment much less knowledge of any other Registrars within the City College system who had any contract or promise of tenure. In *Roth,* the Supreme Court stated:

---

2.  Apparently, a miscommunication between the administration and campus security led to a faculty member, Lois Jean Komai, being temporarily denied access to campus by a security guard. The record is without support for Tom Brezill's allegation that a faculty member and administra-

tor were escorted off campus in shackles. Rather, Komai was mistakenly denied access to campus, and only Mitchell was terminated. Subject to the college's standard security procedures following the termination of an employee, the door locks and computer access codes were changed.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. As an "at-will employee" the plaintiff clearly had no entitlement to continued employment and thus could be dismissed at any time for any reason. This is evident from the *Rules for the Management and Government of the City Colleges of Chicago* which state "the Board shall have sole authority, in its discretion, to appoint and to terminate an administrative employee at any time." This clear statement of the plaintiff's position was unrebutted by any evidence; therefore, we can only conclude that the plaintiff had no property interest in his position and thus was not entitled to any type of hearing regarding his termination.

### B. The Violation of Plaintiff's Liberty Interest

Mitchell also alleges that the defendants denied him a liberty interest through their handling of his termination. Such a claim was recognized in *Roth* when the Supreme Court stated:

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' *Wisconsin v. Constantineau,* 400 U.S. 433, 437 [91 S.Ct. 507, 510, 27

L.Ed.2d 515] In such a case, due process would accord an opportunity to refute the charge before University officials.

.    .    .    .    .

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."

*Roth,* 408 U.S. at 573, 92 S.Ct. at 2707 (citations and footnotes omitted). This court has explained that "a government employee's dismissal infringes a liberty interest where '(1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities.'" *Hannon v. Turnage,* 892 F.2d 653, 660 (7th Cir.1990), *cert. denied,* 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990) (quoting *Munson v. Friske,* 754 F.2d 683, 693 (7th Cir.1985)). We further stated that "to prevail, even assuming that any information surrounding his dismissal was sufficiently damning to implicate a liberty interest, the government must still have participated in the dissemination of this information to the public." *Id.* We have also declared that "[d]enial of a liberty interest requires more than just being fired." *Simpkins v. Sandwich Community Hospital,* 854 F.2d 215, 218 (7th Cir.1988). " 'Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy.' " *Id.* (quoting *Munson,* 754 F.2d at 693).

■ The record consists primarily of testimony from various witnesses presented before the magistrate. Viewing the record in the light most favorable to the plaintiff reveals that neither the College nor President Brown publicly disseminated any damaging information concerning Mitchell's termination. On the contrary, the firing was handled in a very professional and private manner. On August 17, 1990, President Brown orally informed Mitchell of his suspension in

a private conference. The reasons were explained in a letter given directly to the plaintiff on September 11, 1990. Despite these attempts to keep the termination confidential, the plaintiff alleges that President Brown publicized the firing at a meeting of eighty to ninety faculty and administrators. But President Brown was not the one who initially made the faculty gathering aware of Mitchell's termination. During the staff meeting, union leader Tom Brezill disrupted the meeting and attempted to take over the microphone. He openly confronted the president with allegations that a faculty member and the Registrar had been barred from campus and removed in shackles. President Brown was understandably surprised by the disruption but clarified that no faculty members had been barred from campus and explained that Mitchell had been terminated and certain security procedures were being followed to protect confidential records. President Brown testified before the magistrate that at the faculty meeting he offered some remarks about changing the door locks and the computer access codes as a general practice. These security measures occurred on a routine basis or when an employee was terminated to ensure the confidentiality of school records. The president declined, however, to discuss any details of the termination, much less to discuss them at this gathering.

It is quite clear that the president attempted to handle the situation in a professional manner through refusing to disclose any details concerning Mitchell's termination. Mitchell claims, however, that the president's comments to the faculty about changing the locks and the computer access codes impugns his character. We disagree. Mitchell's own witness, Walter Lynch, testified that codes and locks are regularly changed for security reasons (which demonstrates that maintaining the confidentiality of student records was a legitimate concern). Finally, the testimony of Patricia Rangel, Patricia Cooks (another faculty member who attended the meeting) and Dr. Brown clearly demonstrate that the president did not initiate the discussion in the staff meeting, nor did he disclose any information damaging Mitchell's "reputation, honor or integrity." If Mitchell seeks to place the responsibility for the disclosure of the information at the staff meeting, he should look to Tom Brezill not President Brown.

We hold that because the plaintiff Michael Mitchell has failed to demonstrate the denial of either a property or liberty interest, the magistrate's decision granting defendants' motion for summary judgment must be

AFFIRMED.