Dr. Karol K. HOWARD, Plaintiff,

v.

BOARD OF EDUCATION OF SYCA-
MORE COMMUNITY UNIT SCHOOL
DISTRICT NO. 427, et al. Defendants.

No. 94 C 50175.

United States District Court,
N.D. Illinois,
Western Division.

July 21, 1995.

Marilyn F. Longwell, Law Offices of Marilyn F. Longwell, Chicago, IL, Karen K. Howard, Kansas City, MO, for plaintiff.

Frank B. Garrett, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Gregory E.

Rogus, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

### INTRODUCTION

REINHARD, District Judge.

Plaintiff, Karol K. Howard, filed a five-count, amended complaint[1] against defendants, Board of Education of Sycamore Community Unit School District No. 427 (the Board), Charles McCormick (individual capacity) and Jeffrey Welcker (individual capacity), seeking relief under 42 U.S.C. § 2000e *et seq.* (Title VII), 20 U.S.C. § 1681 *et seq.* (Title X) and 42 U.S.C. § 1983. Jurisdiction is premised on 28 U.S.C. § 1331, and venue is proper as all complained of conduct occurred in this division and district. All defendants have moved to dismiss the various counts against them, and the Board has also moved to strike Counts I–III from the amended complaint.

### FACTS

The following facts are taken from plaintiff's amended complaint. The court will not repeat the background factual allegations of the amended complaint to the extent they are the same as contained in the original complaint and set forth in this court's prior order, *See Howard v. Board of Educ. of Sycamore Community Unit Sch. Dist. No. 427*, 876 F.Supp. 959 (N.D.Ill.1995).[2] Suffice it to say that plaintiff claims she was subject to sexually offensive comments, both written and oral, made by both fellow teachers and students. She further claims that Welcker was made aware of such conduct and, additionally, that because of Welcker's awareness the Board had knowledge.

Specifically, in Count IV (against the Board only), plaintiff alleges that she was sexually harassed in violation of Title IX, which affected a term, condition or privilege of her employment with the Board. In particular, she alleges that she complained to Welcker and Julie Wheeler (executive director for business and personnel) about the sexual harassment, "which included notes of a sexually offensive nature being posted about Howard." She also complained to Jeff Clapsaddle (junior high school principal) about sexually offensive comments by Dennis Durbin, a male teacher, about female students. She also observed offensive comments by a male teacher about a female teacher. It is further alleged in Count IV that the Board knew of the hostile environment and inappropriate conduct of Durbin and took no steps to correct the hostile environment or inappropriate conduct.[3] Additionally, plaintiff alleges that the hostile environment was an implied permanent condition of her employment because of the Board's and Welcker's refusal to eliminate the sexually hostile and harassing work environment, that she was constructively discharged because of her complaints and that the actions of the Board were "intentional, willful and calculated toward [plaintiff]."

In Count V (against the Board, Welcker and McCormick), plaintiff seeks redress un-

---

1. While plaintiff has labelled her most recent complaint as a "first amended complaint," the court will refer to it as the amended complaint as it is the only amended complaint filed in this case so far.

2. This court, on February 8, 1995, ruled on defendants' motions to dismiss plaintiff's original complaint. *See Howard v. Board of Educ. of Sycamore Community Unit Sch. Dist. No. 427*, 876 F.Supp. 959 (N.D.Ill.1995). In that order, the court, among other things, denied the Board's motion to dismiss plaintiff's Title VII claims in Counts I, II and III (sex discrimination, sexual harassment and retaliation, respectively). Consequently, plaintiff has not sought, nor had need to seek, leave to amend Counts I, II and III. Nonetheless, she has amended Counts I, II and III in her amended complaint. While the Board

seeks to have Counts I, II and III stricken from the amended complaint because of this procedural indiscretion, the court will simply strike all amendments contained in Counts I, II and III, thereby leaving Counts I, II and III as pleaded in plaintiff's original complaint. Factually, the court will not further discuss Counts I, II and III in any detail as they are adequately set forth in this court's February 8 order.

3. Plaintiff asserts in a footnote to paragraph 48 of her amended complaint that she makes her claim of knowledge on the part of the Board pursuant to Fed.R.Civ.P. 11(b)(2), which provides that the "claims ... are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

der equal protection, the First Amendment and procedural due process. More specifically, plaintiff alleges that she was intentionally discriminated against based on her being a female and as a result of the sexual harassment directed at her and the failure to eliminate that harassment after she complained. It is further alleged that the Board's widespread practice of ignoring sexual harassment in the schools was so permanent and well-settled as to constitute a custom or usage with the force of law within the Sycamore school district.[4] Furthermore, Welcker, it is alleged, knew of plaintiff's complaints and took no action against the students to stop the harassment, thereby intentionally permitting the harassment to continue.

As for McCormick, plaintiff alleges in Count V that he knew of plaintiff's complaints regarding his son's inappropriate conduct, including the posting of sexually explicit signs and engaged in a conspiracy with state actors, Welcker, Hammond and Wheeler to deprive plaintiff of her civil rights. The alleged conspiracy consisted of meetings between Welcker and McCormick, between Wheeler and McCormick, and between McCormick and Hammond, all of which discussed plaintiff and her complaints about McCormick's son. Plaintiff further alleges that "such meetings had as their purpose the removal of [plaintiff] from her position."

Plaintiff also claims in Count II that she was denied her procedural due process "rights to a hearing pursuant to [Board] and state regulations when they decided to terminate her services by" constructively discharging her. She further alleges that she engaged in constitutionally protected speech involving her complaints of sexual harassment[5] and that such speech was, for purposes of the First Amendment, an issue of public concern.

## CONTENTIONS

McCormick contends that Count V should be dismissed as to him as the only theory

alleged, conspiracy with state actors, is defective for failing to allege, expressly or implicitly, the existence of an agreement between McCormick and the state actors to deprive plaintiff of her civil rights.

As to the Title IX claim in Count IV, the Board argues it should be dismissed because plaintiff has no private cause of action under Title IX and, alternatively, because plaintiff has not stated a claim under Title IX.

The Board further contends that the equal protection claim in Count V should be dismissed because: (1) there are no allegations that it established a constitutionally infirm policy; (2) there are no allegations that it engaged in any wrongdoing that caused plaintiff injury; (3) there are no allegations that Welcker or any other school official with whom plaintiff interacted has final policy-making authority; (4) there are insufficient allegations of an official unconstitutional custom or practice of disparate treatment of women; and (5) the allegations pertaining to Welcker's knowledge of sexual harassment is limited to students, who are not state actors under section 1983. As for plaintiff's due process claim, the Board contends that plaintiff, who was not a tenured teacher, had no protectible property interest in her job under Illinois law. Additionally, the Board maintains that plaintiff's First Amendment claim is defective because her complaints were a personal grievance and not a matter of public concern. Lastly, the Board argues that plaintiff's conspiracy claim in Count V must fail because plaintiff's constitutional rights were not violated, because (adopting McCormick's argument) there are no allegations of an agreement concerning the conspiracy and because such a claim is barred by the intracorporate conspiracy doctrine.

Welcker contends that he should be dismissed in his individual capacity because, as a supervisor, he only knew of students' actions and the students were not state actors. Secondly, Welcker argues that because there are no allegations that he intended plaintiff

4. Again, plaintiff refers to Fed.R.Civ.P. 11(b)(3) in a footnote, contending that paragraph 59 concerning custom or usage is "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

5. Plaintiff again refers to Fed.R.Civ.P. 11(b)(2) in alleging her First Amendment claim.

to be the victim of discrimination he cannot be held liable as a supervisor under section 1983. Lastly, he posits that he is qualifiedly immune because plaintiff has not shown that closely analogous cases clearly established that his actions or inactions were unlawful.

Finally, the Board and Welcker seek dismissal of any punitive damages claims against the Board or individuals acting in their official capacities.

Plaintiff responds to McCormick's argument by contending that the allegations in paragraph 62 of her amended complaint allow a jury to infer that an agreement between the alleged conspirators existed.

She further contends that under Supreme Court authority Title IX provides for a private right of action, is not duplicative of a Title VII cause of action and is not preempted in this context by Title VII. Furthermore, she points to paragraph 48 of her amended complaint as alleging knowledge of the sexual harassment on the part of the Board. She also argues that because she has incorporated the allegations of her Title VII claims into her Title IX count she has sufficiently alleged a claim under Title IX.

Regarding Count V, plaintiff responds that: (1) paragraphs 49 and 59 of the amended complaint sufficiently allege a policy or custom of ignoring sexual harassment; (2) the contention of the Board that no school official had final policymaking authority is premature as she need not allege that element under *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); (3) the Board's arguments concerning her equal protection and due process claims fail for the same reasons as argued in her response to the motion to dismiss her original complaint; (4) her First Amendment claim is based on a matter of public concern because she complained not only of sexually offensive conduct directed at her but also directed at other teachers and students; (5) she has sufficiently alleged in paragraph 62 that an agreement among the conspirators existed; (6) the intracorporate conspiracy doctrine does not apply as McCormick was not a Board employee; (7) Welcker was liable as a supervisor under

section 1983 because, as alleged in paragraphs 31, 32, 38, 60 and 61 of the amended complaint, he acted with deliberate indifference in permitting section 1983 violations to occur; and (8) based on her arguments raised in her prior response to the original motion to dismiss, Welcker is not qualifiedly immune and plaintiff is entitled to punitive damages.

## DISCUSSION

■ In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of plaintiff. *See Chaney v. Suburban Bus Div. of the Regional Trans. Auth.*, 52 F.3d 623, 626–27 (7th Cir.1995). Dismissal is permitted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Id.* at 627.

### I. *McCormick* (Count V)

■ The focus of McCormick's motion to dismiss is whether plaintiff has adequately alleged the existence of an agreement between McCormick and the other conspirators. While the amended complaint does not expressly allege that an agreement existed, it need only give rise to a reasonable inference that such an agreement had been entered into. Reading paragraph 62 of the amended complaint liberally, as it must, the court finds it reasonable to infer the existence of an agreement, especially from that part of paragraph 62 which alleges that the various meetings "had as their purpose the removal of [plaintiff] from her position." To require plaintiff at this point to replead to add the word "agreement" to the amended complaint is unnecessary.

### II. *Title IX (Count IV)*

■ The Board contends, citing *Wedding v. University of Toledo*, 862 F.Supp. 201 (N.D.Ohio 1994), that plaintiff's Title IX claim is preempted by Title VII. Plaintiff contends not, arguing that Congress intended to afford an employee a private cause of action for gender-based employment discrim-

ination under Title IX. This court's research has revealed only a handful of cases that directly address the issue of whether an employee of an educational institution may, under Title IX, prosecute a private cause of action based on gender-based employment where the remedies sought are those afforded by Title VII. In *Wedding,* 862 F.Supp. 201, and *Storey v. Board of Regents of Univ. of Wisconsin,* 604 F.Supp. 1200 (W.D.Wisc.1985), the district courts found that an employee of an educational institution cannot bring a private cause of action for gender discrimination under Title IX.

This court finds the reasoning of *Wedding* particularly persuasive. There, the court concluded that Title VII provides a comprehensive scheme for aggrieved individuals to enforce the prohibition against discrimination in employment. *Wedding,* 862 F.Supp. at 203. Further, the court expressed concern that by allowing a comparable cause of action under Title IX the "very comprehensive, detailed, and express provisions of Title VII could be completely avoided." *Id.* The court further found that the legislative history of Title VII indicates Congressional intent that Title VII preempt a similar cause of action under Title IX, *Id.* at 203–04; *see also Storey,* 604 F.Supp. at 1205 (concluding that Congress intended Title VII to preempt remedies other than those in existence prior to its enactment but recognizing that Congress remains free to provide victims of employment-related discrimination with additional remedies).

This court is not persuaded by the ruling in *Henschke v. New York Hospital–Cornell Medical Ctr.,* 821 F.Supp. 166 (S.D.N.Y. 1993), wherein the court found that an employee may maintain a private cause of action for gender-based employment discrimination under Title IX.[6] In reaching that conclusion, the *Henschke* court expressly rejected the ruling in *Storey* and relied on *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982), and *Franklin v.*

*Gwinnett County Pub. Sch.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), to find that Title VII does not preempt such a claim. *Id.* at 172–73. This court does not read the *Cannon, Bell* and *Franklin* decisions as supporting the conclusion that the legislative history of Title IX demonstrates Congress' intent to have Title IX serve as an additional protection against gender-based discrimination regardless of the available remedies under Title VII. Accordingly, this court dismisses plaintiff's Title IX claim as being precluded by Title VII.

### III. Count V

#### A. Board (Policy/Custom)

■ A local governmental entity, such as the Board here, may only be held liable under section 1983 if a plaintiff can show the existence of an official policy or custom of that governmental entity which resulted in the plaintiff's constitutional injury. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 122, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citing *Monell v. New York City Dept. of Social Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978)). Here, plaintiff has alleged, in an effort to meet the dictates of *Monell,* that the Board violated her civil rights "because of its widespread practice of ignoring sexual harassment in the schools," and that such practice, "although not authorized by written law or express municipal policy, was permanent and well settled so as to constitute a custom or usage with the force of law in the Sycamore School District." It is further alleged that the Board "knew of the hostile environment and inappropriate conduct of the male teacher (Dennis Durbin) and took no steps to correct the hostile environment or inappropriate conduct of the male teacher."

■ The court finds these allegations to sufficiently state an official policy or custom for a section 1983 claim against the Board. In alleging the existence of an official policy or custom, a plaintiff need only include a

---

6. The court also considers *Yusuf v. Vassar College,* 35 F.3d 709 (2d Cir.1994), a case relied on by plaintiff, to be distinguishable as the plaintiff there was a student, not an employee, who brought suit under Title IX claiming sex discrimination. A student bringing such a claim is, of course, a classic application of Title IX.

"short and plain statement" of such official policy or custom. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, — U.S. —, —, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (quoting, in part, Fed.R.Civ.P. 8(a)(2)). This plaintiff has done. *See Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir.1993) (allegations of widespread practice of unconstitutional conduct will support conclusion of municipal liability). Therefore, the court denies the Board's motion to dismiss Count V on this basis.[7]

## B. *Due Process*

■ The only reference to a denial of due process in plaintiff's amended complaint is contained in paragraph 63 wherein it is alleged that "[plaintiff] has been deprived of her liberty and property interests under the due process clause of the Constitution; that is, [plaintiff] claims she was deprived of her rights to a hearing pursuant to [Board] and state regulations when they decided to terminate her services by forcing her to take a 'constructive discharge', and by constructively discharging her." Such allegations are insufficient to state a procedural due process claim based on either a liberty or property interest.

■ A liberty interest under the Fourteenth Amendment is implicated when either the individual's good name, reputation, honor or integrity is at stake because of what the government is doing to him or the government has imposed upon him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities. *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir.1993) (citing *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)). A government employee's dismissal infringes a liberty interest where the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive

acts. 996 F.2d at 167. While some stigma which affects future employment opportunities attaches whenever an employee is involuntarily terminated, such harm does not infringe on an employee's liberty interests. *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir.1986). Rather, the critical statements must make it virtually impossible for the employee to find a new position in his chosen profession. *Ratliff*, 795 F.2d at 625–26; *Munson v. Friske*, 754 F.2d 683, 694 (7th Cir.1985). Lastly, a fired employee's liberty interest may only be infringed if it is the employer who disseminates publicly the allegedly damaging information. *Mitchell*, 996 F.2d at 167. In other words, even assuming that any information surrounding the dismissal was sufficiently damning to implicate a liberty interest, the government must have participated in the dissemination of this information to the public. *Mitchell*, 996 F.2d at 167.

The allegations of plaintiff's amended complaint here come nowhere close to alleging a liberty deprivation due process claim. For instance, there are no allegations of lost employment opportunities or public dissemination by defendants.

■ As for the property interest branch of procedural due process, a plaintiff must allege a legitimate claim of entitlement. *Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867 (7th Cir.1995). A legitimate claim of entitlement is one that is legally enforceable under state law. *Id.* A plaintiff must identify some state statute, regulation or an equivalent, legally enforceable expectancy as the source of her claimed property right in her continued employment. *Id.* In this case, plaintiff has no allegations setting forth a property interest in her employment. Consequently, she fails to set forth a claim for denial of procedural due process. Therefore, because she has alleged neither a liberty nor a property interest, the court dismisses plaintiff's due process claim in Count V of the amended complaint.[8]

---

7. The court notes, however, that Welcker, as the high school principal, does not, as alleged, constitute, under Illinois law, *see Praprotnik*, 485 U.S. at 124, 108 S.Ct. at 924, a policymaker of the Board. *See Cornfield v. Consolidated High Sch. Dist. 230*, 991 F.2d 1316, 1324–26 (7th

Cir.1993); *Landstrom v. Barrington Sch. Dist.*, 739 F.Supp. 441, 444–46 (N.D.Ill.1990).

8. The Board and Welcker argue that plaintiff cannot, as a matter of law, state a claim for

## C. *First Amendment*

Not all speech by public employees is protected by the First Amendment such that the Constitution is violated if a public employer retaliates in response to that speech. *Cliff v. Board of Sch. Comm'r of the City of Indianapolis*, 42 F.3d 403, 409 (7th Cir.1994). Before such speech will be protected, it must address a matter of public concern, and the speaker's interest in her expression must not be outweighed by any injury the speech could cause to the interest of government, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* Furthermore, unless the plaintiff can first establish that her speech addressed *a matter of public concern*, the court need not balance the respective interests. *Id.* That threshold question is one of law for the court. *Id.*

To determine, in this case, whether plaintiff's complaints about the sexually offensive comments were a matter of public concern, the court must consider the content, form and context of her complaints, with content being the most important. *Id.* Relevant to, but not dispositive of, this issue is the motive which underlies the employee's statements. *Id.* Thus, the employee's motive is considered along with the other factors. *Id.* at 410. The fact that an employee speaks, at least in part, for personal reasons will not automatically deprive her statements of constitutional protection. *Id.* Conversely, the fact that an employee speaks up on a topic of public import does not necessarily render her remarks on that subject protected. *Id.* Put another way, the public concern element is lacking as a matter of law if the speech concerns a subject of public interest but the expression addresses only the personal effect upon the employee. *Id.*

In the present case, plaintiff generally alleges that her complaints of sexual harassment were on "an issue of public concern." This conclusion, however, is belied by the more specific allegations of the amended complaint. It is clear from the allegations in

paragraph 57 concerning the complaints that it was plaintiff personally who was offended and that she was not speaking for other teachers at the school when she voiced her complaints. *See Cliff,* 42 F.3d at 411. Paragraph 30 of the amended complaint does not satisfy the pleading requirements for this type of First Amendment claim. Plaintiff has simply failed to allege, other than in a generalized and conclusionary fashion, that her complaints were driven by her motivation to remedy sexually offensive conduct at the school for the benefit of others or the public at large. Therefore, the court dismisses plaintiff's First Amendment claim in Count V.

## D. *Equal Protection*

### 1. The Board

The Board contends that the equal protection claim against it in Count V should be dismissed because plaintiff has not alleged a policy, custom or practice which causes disparate treatment of female teachers. The court has previously ruled in this order that plaintiff's allegations of custom or policy are sufficient. Therefore, the court denies the Board's motion to dismiss the equal protection claim on that basis.

### 2. Welcker

Welcker contends that he is not individually liable under Count V because (1) he cannot be held liable as a supervisor under section 1983 because students are not state actors, (2) the amended complaint does not properly allege that he intended plaintiff to be the victim of discrimination through the actions of others, and (3) he is qualifiedly immune.

While an intent to harass is an essential element of an equal protection claim brought via section 1983 *see Trautvetter v. Quick,* 916 F.2d 1140, 1149 (7th Cir.1990), the court considers the amended complaint to adequately allege such intent. Specifically, it is alleged in paragraph 60 that Welcker knew

denial of due process based on a property interest because under Illinois law she was not tenured. Lack of tenure, however, does not, alone, defeat plaintiff's claim. Although unlikely in

these circumstances, plaintiff could allege bases, other than tenure, under Illinois law that give rise to a property interest.

of plaintiff's complaints of sexual harassment and "intentionally took no action against the students to stop the harassment, thereby intentionally permitting the harassment to continue." These allegations adequately state an equal protection claim against Welcker.[9]

### E. Qualified Immunity

■■■ Welcker contends he is entitled to qualified immunity as to plaintiff's section 1983 claim because there is no clearly established law that he had a duty to take action in response to the students' allegedly sexually offensive conduct. The qualified immunity doctrine provides that government officials performing discretionary functions are generally shielded from liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir.1995). The doctrine is designed in such a way as to permit the resolution of many insubstantial claims on summary judgment and to avoid subjecting government officials either to the costs of trial or to the burdens of discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. *Id.* Absent allegations stating a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Id.*

■■■ To defeat a claim of qualified immunity, a plaintiff must allege a cognizable violation of a constitutional right clearly established at the time of the alleged misconduct. *Id.* at 570. Whether a right is clearly established is a question of law, the proof of which is the plaintiff's burden. *Id.* Clearly established rights are those which are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* The law at the time of the conduct in question must have been clear in relation to the specific facts confronting the

public official when he acted. *Id.* Until a particular constitutional right has been stated so that reasonably competent officials would agree on its application to a given set of facts, it has not been clearly established. *Id.*

■■■ The court, in assessing the efficacy of any qualified immunity defense, should look to whatever decisional law is available to ascertain whether the law has been clearly established. *Id.* A sufficient consensus based on all relevant case law, indicating that the official's conduct was unlawful, is required. *Id.* Even if the law is clearly established, an official is qualifiedly immune if at the time of his conduct he held an objectively reasonable belief that his actions were lawful. *Id.*

■■ In this case, plaintiff alleges that Welcker is liable under section 1983 because he knew of her complaints, intentionally took no action to stop the student harassment and intentionally permitted the harassment to continue. It is further alleged that Welcker was part of a conspiracy which "had as [its] purpose the removal of [plaintiff] from her position." There can be no doubt that during the time of this alleged conduct (August 1991 to May 1993) sexual harassment in the workplace was constitutionally actionable as a denial of equal protection if such harassment was intentional. *See Trautvetter,* 916 F.2d at 1149. As such, in a typical workplace, Welcker could not claim qualified immunity if he had an intentional hand in plaintiff's sexual harassment, even if such harassment occurred through plaintiff's fellow employees. Of course, a school is not a typical work environment in the sense that an employee (teacher) is surrounded by, and interacts with, a number of non-employees (students) within the workplace. Thus, the precise question presented here is whether a principal of a public school would be objectively reasonable in believing that his intentionally permitting students to harass a teacher and conspiring to remove the teacher because of

---

9. The court does not agree with Welcker's characterization of his liability as "supervising." The court reads plaintiff's amended complaint as alleging that Welcker directly harassed her by allowing the allegedly sexually offensive conduct to continue. Plaintiff need not allege supervising liability to maintain her equal protection claim against Welcker.

her complaints did not violate the constitution.[10]

Given the clearly established law surrounding sexual harassment in the workplace, combined with the unique role a principal plays in the administration of a public school, the court considers it to be objectively unreasonable to believe that a principal who intentionally permits students to sexually harass a teacher after the teacher voices complaints does not violate equal protection. Based on the allegations as they now stand, it cannot be said that Welcker, who allegedly knew of the sexual harassment via plaintiff's complaints and intentionally did nothing to stop it, could have held an objectively reasonable belief that his action or inaction was constitutionally appropriate. He, as the principal, is in a unique position to attempt to control the behavior of the students. Conversely, he has a responsibility to the teachers as well in his role as chief administrator of the school. Welcker cannot hide behind the curtain of qualified immunity simply because it was students who were the primary harassers. The court, therefore, denies Welcker's motion to dismiss based on qualified immunity. In doing so, the court recognizes that as the facts are developed in this case it may become evident that such unique circumstances existed in this case that it would have been objectively reasonable on Welcker's part to believe he was not violating the constitution. That, of course, is a matter more appropriately addressed in a summary judgment proceeding.

### F. Intracorporate Conspiracy Doctrine

▮▮▮ The intracorporate immunity doctrine bars a constitutional conspiracy claim under 42 U.S.C. § 1985 against the managers of a corporation who are jointly pursuing lawful business even though the acts within their employment are said to be discriminatory or retaliatory. *Wright v. Illinois Dept. of Children & Family Serv.*, 40 F.3d 1492, 1508 (7th Cir.1994); *Hartman v. Board of Trustees of Community College Dist. No. 508*, 4 F.3d 465, 469 (7th Cir.1993); *Doe v. Board of Educ. of Hononegah Sch. Dist. 207*, 833 F.Supp. 1366, 1381 (N.D.Ill. 1993) (citing *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir.1990)). The doctrine applies to conspiracy claims brought against school administrators and has been extended by this court to conspiracy claims under section 1983. *Board of Educ. of Hononegah*, 833 F.Supp. at 1381–82. It also applies even though the individuals were motivated, in part, by personal bias or animus. *Hartman*, 4 F.3d at 470. On the other hand, the doctrine would probably not apply where corporate employees are shown to have been motivated solely by personal bias. *Id.* Put another way, the doctrine bars conspiracy claims based on intracorporate discussions that result in discriminatory or retaliatory actions except in egregious circumstances. *Wright*, 40 F.3d at 1509.

▮▮▮ Here, the conspiratorial allegations are that Welcker, other school officials and McCormick, a non-school official, conspired to deprive plaintiff of her civil rights. This conspiracy manifested itself, it is alleged, through meetings between Welcker and McCormick, Hammond and McCormick, and Wheeler and McCormick regarding plaintiff's complaints about McCormick's son and as to the removal of Howard from her job. To the extent plaintiff's conspiracy theory is premised upon McCormick's involvement, as a non-corporate player, it cannot be determined at this point whether such involvement defeats the intracorporate conspiracy defense. Moreover, it is impossible to discern, at this stage of the proceedings, whether the

10. The court has found no cases directly addressing the responsibility of a principal or other school administrator for the sexually harassing conduct of students directed toward teachers. There are cases that deal with the issue in the context of students harassing other students, *see, e.g., Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447 (9th Cir.1995) (holding that school counselor qualifiedly immune under law as of 1990 for failure to adequately address student sexual harassment of co-student); *Mennone v. Gordon*, 889 F.Supp. 53 (D.Conn.1995) (ruling that school superintendent qualifiedly immune from Fourteenth Amendment claim where he allegedly failed to take reasonable steps to prevent student sexual harassment of fellow student). The present case is different from these cases, however, as here the harassment is alleged, in part, to be by students directed at a teacher.

individual conspirators were motivated partly, solely or at all by personal animus toward plaintiff. Therefore, the court denies the motion to dismiss the conspiracy claim based on the intracorporate conspiracy doctrine.

Finally, the court dismisses the punitive damages claims against the Board for the reasons stated in its previous order. The court does not read the amended complaint as seeking punitive damages against Welcker and McCormick in their official capacities and therefore denies the motion to dismiss in that regard.

### CONCLUSION

For the foregoing reasons, the court dismisses Count IV of the amended complaint. The court also dismisses the First Amendment and due process claims in Count V, dismisses the punitive damages claims against the Board and denies the motion to dismiss the equal protection claim in Count V. Lastly, the court grants the motion to strike Counts I—III to the extent those counts contain allegations different from plaintiff's original complaint.