41 F.3d 1510
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Rod CALLAHAN, Plaintiff-Appellant,
v.
CITY OF ROCKFORD, ILLINOIS, Mayor Charles Box, Alan Werner,
et al., Defendants-Appellees.
 No. 94-1758.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 13, 1994.
Decided Nov. 14, 1994.
 
 Before LAY*, BAUER and WOOD, Jr., Circuit Judges.
 
 ORDER
 
 1
 On January 10, 1990, Rod Callahan was discharged from his position as an employee of the City of Rockford, Illinois. Callahan filed suit pursuant to 42 U.S.C. Sec. 1983, alleging that his termination constituted a violation of his Fourteenth Amendment due process rights. The defendants moved for summary judgment and the case was dismissed. Callahan appeals, and we affirm.
 
 I.
 
 2
 The facts giving rise to this case are as follows. Rod Callahan was employed by the City of Rockford for over fifteen years. He was a member of the bargaining unit before being promoted to a supervisory position in the sewer division in the Department of Public Works on August 21, 1987. Callahan was a nonunion employee in his capacity as supervisor of the sewer division and did not execute an employment contract of any type with the City of Rockford. On January 10, 1990, Callahan was informed by Ray Sparkman, the Superintendent of the Street and Sewer Division, that he was being terminated effective January 12, 1990, due to the inadequate performance of his position.
 
 
 3
 Callahan then filed a written grievance with Alan Werner, the Director of the Department of Public Works, and claimed that he had not been subjected to progressive discipline as required by the city's personnel rules, that he was not given a pre- or post-deprivation hearing to clear his name, and that his discharge was without cause. Callahan's grievance was denied by George Wheetley, the city's personnel director. Callahan did not appeal the denial of his grievance to the personnel appeals board.
 
 
 4
 Instead, Callahan filed a two-count complaint under 42 U.S.C. Sec. 1983. In the first count, Callahan alleged that he possessed a protected property interest in his position and that the City of Rockford and certain of its officials violated his rights under the Due Process Clause of the Fourteenth Amendment by summarily terminating him. In the second count, Callahan alleged that the termination deprived him of a vested liberty interest both by stigmatizing him and thereby foreclosing his ability to secure employment in the future, and by failing to afford him a meaningful opportunity to clear his name.
 
 
 5
 In the response and supporting affidavit which Callahan filed in opposition to the defendants' motions for summary judgment, Callahan included numerous disputed facts which raised for the first time, among other things, the issue of an oral employment contract between Callahan and the city. The defendants responded by filing motions to strike these additional statements as untimely. The district court granted the defendants' motions to strike and thereafter the district court also granted the defendants' motions for summary judgment on both counts of the complaint.
 
 II.
 
 6
 We review the district court's grant of summary judgment by considering all factual issues in the light most favorable to the nonmoving party (herein Callahan) and determining de novo whether there exists any genuine issue of material fact requiring submission of the case to the finder of fact or whether judgment as a matter of law was appropriate. Colburn v. Trustee of Indiana Univ., 973 F.2d 581, 585 (7th Cir.1992).
 
 
 7
 In order to show that he had a interest in his position as supervisor for the sewer division which was protected under the Fourteenth Amendment's due process guarantee, Callahan must demonstrate that he held a " 'property interest' " in the terms or conditions of that position. Id. at 589 (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). This property interest must be created by rules or understandings which are traceable to some independent source, such as state law or a contractual provision. Id.; see also Hadley v. County of Du Page, 715 F.2d 1238, 1241 (7th Cir.1983), cert. denied, 465 U.S. 1006 (1984). A sufficiently protected property interest may also arise under less explicit terms. The Supreme Court has held, for example, that where a state university has not formally adopted a tenure system for its professors, but does adhere to a "de facto" tenure system, that an "unwritten common law" of employment is thereby established which may create a legitimate property interest. Perry v. Sindermann, 408 U.S. 593, 602 (1972).
 
 
 8
 Callahan argues that his property interest stems from two sources: the City of Rockford Rules and Regulations ("Rules and Regulations") and certain oral representations made to him by a city official. We address each of these bases below.
 
 A.
 
 9
 Callahan contends that the Rules and Regulations served to contractually entitle him to continued employment by specifying procedures to be followed before dismissal of a city employee. Specifically, Callahan faults the city for not subjecting him to the course of progressive discipline outlined in the Rules and Regulations. Under Illinois law, which controls this matter, a personnel policy manual is capable of creating an employee contract. See Campbell v. City of Champaign, 940 F.2d 1111, 1112 (7th Cir.1991) (citing Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987)). In Duldulao, the Supreme Court of Illinois held that
 
 
 10
 an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.
 
 
 11
 Duldulao, 115 Ill.2d at 490, 106 Ill.Dec. at 12, 505 N.E.2d at 318. The Rules and Regulations at issue in this case fail, on two of these grounds, to create an enforceable property right on behalf of Callahan.
 
 
 12
 First, the language of the personnel rules is such that Callahan could not have reasonably believed that the position he was offered was other than at will. Section 20 of the Rules and Regulations, entitled "Disciplinary Action," states that its purpose is
 
 
 13
 [t]o establish guidelines regarding the City's disciplinary action system. The City of Rockford retains the right to take any necessary action, including discharge, on an employee whose conduct violates any rules, regulations or policies of the City, or whose work is considered unsatisfactory by the employee's supervisor and/or Department Head.
 
 
 14
 Moreover, the Introduction to the Rules and Regulations states that "[t]hese Rules & Regulations do not constitute an employee contract; nor shall they guarantee promise of wages, hours, conditions of employment, or job security. The City of Rockford is an At-Will Employer."
 
 
 15
 Even when viewed in the light most favorable to Callahan, the language of the Rules and Regulations does not contain a "clear promise" that could lead Callahan to reasonably believe that he had a contractual right to the progressive discipline steps outlined in Sec. 20. The language quoted above constitutes a conspicuous disclaimer which is sufficient to foreclose this expectation.
 
 
 16
 The Rules and Regulations also fail the second part of the Duldulao test. The evidence indicates that these personnel rules were never "disseminated" to city employees. The only occasions Callahan had to examine the Rules and Regulations prior to this litigation were in his capacity as a supervisor when he had a specific problem with his employees.
 
 
 17
 Callahan alleges, however, that the explicit disclaimer found in the Introduction to the Rules and Regulations was not included until March 1989--nearly two years after Callahan's promotion to supervisor--and is thus inapplicable to him. This argument fails for several reasons. First, the purpose language of Sec. 20, quoted above, coupled with the fact that the Rules and Regulations were never disseminated to employees is sufficient--even without the Introduction's disclaimer--to demonstrate that no contract was formed under the Duldulao test. Thus, Callahan's reliance upon Robinson v. Ada S. McKinley Community Servs., Inc., 19 F.3d 359 (7th Cir.1994), is misplaced. The Robinson court did hold that an employer may not unilaterally modify an employment contract through the insertion of a disclaimer in an employee manual, but that court first utilized the Duldulao test and found that an employment contract had been formed. Id. at 360-61. In this case, this first step has not been satisfied--no employment contract was ever formed under any version of the Rules and Regulations.
 
 
 18
 Second, Callahan first raised this issue in response to the defendants' motions for summary judgment--some three years after he initially filed his complaint. It was upon this ground that the district court granted the defendants' motions to strike this issue; reviewing the record de novo, we affirm.
 
 
 19
 When Callahan was asked in his deposition whether he had read the Introduction containing the disclaimer, Callahan stated that he did not remember. "[A]t some point a party who discounts his knowledge of a certain subject cannot create a 'genuine' issue of fact by contradicting unequivocal testimony about the subject." Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1211 (7th Cir.1993). It is too late for Callahan to now argue that the prior version of the Rules and Regulations lacked the disclaimer.
 
 B.
 
 20
 Callahan also argues that a property interest arose when he entered into an oral contract for guaranteed employment upon his promotion to a supervisory position. Callahan alleges that Alan Werner, the Director of the Department of Public Works, promised Callahan that Callahan could return to his previous position if the promotion did not work out. However, Callahan first mentioned this theory in response to the defendants' motions for summary judgment. The record is devoid of any mention of this theory beforehand and thus we also affirm the district court's decision to strike this theory from Callahan's complaint. "Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir.1993) (citation omitted).
 
 III.
 
 21
 In his second count, Callahan alleges that his discharge deprived him of a liberty interest protected by the Fourteenth Amendment.
 
 
 22
 Dismissal of a government employee does not implicate that employee's liberty interests unless it damages the employee's good name, reputation, honor or integrity, or imposes a stigma on the employee which forecloses other employment opportunities. Mitchell v. Glover, 996 F.2d 164, 167 (7th Cir.1993) (citations omitted). However, the stigma which ordinarily attaches to any involuntary termination is insufficient to infringe upon an employee's liberty interests. Ratliff v. City of Milwaukee, 795 F.2d 612, 625 (7th Cir.1986). In addition, Callahan must demonstrate that city officials publicly disseminated the statements which have made it virtually impossible for Callahan to obtain new employment. Mitchell, 996 F.2d at 167-68.
 
 
 23
 Apparently, there were rumors of theft, racism and drunkenness by Callahan, but there is no evidence that city officials were involved in the dissemination of these allegations. The record indicates that the rumors are traceable to Callahan's fellow employees and that an investigation revealed them to be untrue. The rumors were not mentioned to Callahan as reasons for his termination and city officials have testified that these rumors were not a factor in the decision to terminate Callahan. "Absent proof that ... the defendants disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large, [he] cannot show that the defendants' actions impinged on [his] liberty interest in pursuing [his] occupation." Ratliff, 795 F.2d at 627. The mayor and an alderman did ask the director of public works to investigate these allegations, but this action does not constitute a sufficiently public dissemination so as to implicate Callahan's liberty interests. Thus Callahan's liberty interest claim must fail.
 
 
 24
 For all of the foregoing reasons, the decision of the district court granting summary judgement in favor of the defendants is
 
 
 25
 AFFIRMED.
 
 
 
 *
 The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, is sitting by designation