**Henar I. PLAZA–TORRES, Plaintiff**

v.

**Cesar REY, et al., Defendants.**

**No. CIV.02–1216(SEC).**

United States District Court,
D. Puerto Rico.

July 5, 2005.

Glenn Carl James–Hernandez, Guaynabo, PR, for Plaintiff.

Mariana Negron–Vargas, Nellymarie Lopez–Diaz, Reichard & Escalera, Eileen Landron–Guardiola, Eduardo A. Vera–Ramirez, Landron & Vera LLP, San Juan, PR, Luisselle Quinones–Maldonado, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, Ivette Garcia–Figueroa, Carolina, PR,

Mariana Negron–Vargas, Iris V. Hernandez–Castro, Sanchez Betances & Sifre, P.S.C., San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Pending before the Court is Co-defendants Department of Education's and the Commonwealth of Puerto Rico's motion for summary judgment (Docket # 77) and Plaintiff's opposition thereto (Docket # 102). Also pending is Co-defendant Ivette García–Figueroa's, in her individual capacity, motion for summary judgment (Docket # 89) and Plaintiff's opposition (Docket # 107). After carefully examining the parties' arguments, the case record and the applicable law, Co-defendants Department of Education's and the Commonwealth of Puerto Rico's motion will be **GRANTED in part and DENIED in part** and Co-defendant García–Figueroa's motion will be **DENIED.**

### Factual Background

Plaintiff is a school teacher previously employed by the Department of Education. Plaintiff was employed by the Department of Education from the year 1998 until her resignation on February 16, 2001 (Docket # 2 at ¶ 12). Plaintiff alleges that she was forced to resign from her job due to the continuous sexual harassment suffered by her on account of one of her students, Johnny Dávila–Quiñones (Docket # 2 at ¶ 11). Allegedly, this continuous pattern of harassment lasted from October 2000 until her resignation (Docket # 2 at ¶ 11). Thereafter, Plaintiff filed the instant action against Co-defendants César

Rey[1], former Secretary of the Department of Education; Ivette García–Figueroa, School Director at the Petra Román Vigo School; the Department of Education; and the Commonwealth of Puerto Rico for their failure to take appropriate remedial measures to correct the situation of sexual harassment/hostile work environment at the school (Docket # 2 at ¶¶ 14–15, 20) and for their alleged lack an adequate anti-harassment policy (Docket # 2 at ¶ 22). In sum, Plaintiff alleges that her supervisor, Co-defendant García–Figueroa, and the Disciplinary Committee failed to take remedial action even after being informed of the ongoing harassment (Docket # 2 at ¶ 16). As such, Plaintiff filed the instant action for: (i) sexual harassment and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); (ii) violations to 42 U.S.C. § 1981 & § 1983 (Due Process and Equal Protection); (iii) sexual harassment under Puerto Rico Law 17 of April 22, 1988, 29 P.R. Laws Ann. §§ 155a-l; (iv) discrimination under Puerto Rico Law 69 of July 6, 1985, as amended, 29 P.R. Laws Ann. §§ 1321 *et seq.;* and (v) damages under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141–5142.[2]

### Standard of Review

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when

1. All of Plaintiff's claims against Co-defendant Rey, in his official and individual capacities, were voluntarily dismissed with prejudice on November 9, 2004 (Docket # 103).

2. Plaintiff's monetary claims under 42 U.S.C. § 1983 against Co-defendants Department of Education, the Commonwealth of Puerto Rico

and García–Figueroa in her official capacity were previously dismissed with prejudice (Dockets ## 42 & 79). Furthermore, Plaintiff's claims under 42 U.S.C. § 1981 against all Defendants and Plaintiff's Title VII claims against Co-defendant García–Figueroa in her personal capacity were also dismissed with prejudice (Docket # 79).

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *NAS-CO, Inc. v. Pub. Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Prop.,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón,* 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. P.R. Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case," *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz,* 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it

limns differing versions of the truth which a factfinder must resolve.")

■ Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme–Rosado v. Serrano–Rodriguez,* 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown,* 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Prods., Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

**Applicable Law and Analysis**

After reviewing the respective requests for summary disposition and oppositions thereto, the Court notes that the following material facts are uncontested:

1. Plaintiff worked at the Petra Román Vigo School from October 2000 to February 2001 (SUF No. 10).

2. On February 2001 Plaintiff resigned her position as Math Teacher in the Petra Román Vigo School (SUF No. 13).

3. When Plaintiff started working at the Petra Román Vigo School, there was no school director assigned to the school. During that period of time, the person in charge was Mrs. Padilla (SUF No. 31 & 30, respectively).

4. Plaintiff stated that since she started working at the Petra Román Vigo School she felt intimidated by the comments of sexual connotation made by the students Johnny Dávila and Angel Vera (SUF No. 33).

5. On August 8, 2001 Plaintiff filed a Charge of Discrimination within the Equal Employment Opportunity Commission ("EEOC"), which was later amended on two occasions (SUF No. 41).

6. Plaintiff met with the Discipline Committee in relation to Johnny Dávila's conduct (SUF No. 44 & 41, respectively).

7. Plaintiff was evaluated on three occasions by Ms. Evelyn Matos (SUF Nos. 46 & 43, respectively).

8. Ms. Evelyn Matos was the Mathematics Supervisor for the Carolina District I. Her offices were located Carolina, Puerto Rico, outside the Petra Román Vigo School (SUF Nos. 47 & 44, respectively).

9. In Plaintiff's notes, she makes a first entry regarding her communications with Ms. Ivette García on approximately November or December of 2000 (SUF Nos. 53 & 51, respectively).

(Dockets ## 77 & 89).

**A. Co-defendants Department of Education's and Commonwealth of Puerto Rico's Motion for Summary Judgment**

Co-defendants Department of Education and the Commonwealth of Puerto Rico have requested dismissal of Plaintiff's Title VII sexual harassment claim and Due Process claim (Docket # 77). In support of their request for dismissal of said claims, Co-defendants Department of Education and the Commonwealth of Puerto Rico raise various arguments in the alternative: (1) Plaintiff's sexual harassment claim should have been filed under Title IX, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"); (2) neither Title VII nor Title IX authorize a cause of action for student-on-teacher sexual harassment; (3) a cause of action under Title IX would be time-barred; (4) Title VII does not provide for school liabil-

ity for student-on-teacher sexual harassment; (5) Plaintiff has failed to establish that Co-defendants Department of Education and/or the Commonwealth of Puerto Rico were negligent or failed to take reasonable corrective action. Co-defendants also argue that Plaintiff's retaliation claim under Title VII should be summarily dismissed because Plaintiff has failed to prove a *prima facie* case of retaliation and that Plaintiff's Due Process claim should be dismissed because Plaintiff does not have a proprietary interest in the position of school teacher at the Petra Román Vigo School. We will discuss each of these arguments in logical order to the extent that it is necessary.

## I. Sexual Harassment under Title VII

■ Title VII prohibits **any employer** from engaging in unlawful employment practices based upon a person's race, color, religion, sex or national origin. *Provencher v. CVS Pharm., Div. of Melville Corp.*, 145 F.3d 5, 13 (1st Cir.1998) (emphasis added). A hostile or abusive work environment may constitute sex discrimination, actionable under Title VII. In fact, the EEOC's Guidelines on Discrimination Because of Sex ("EEOC Guidelines") specify that sexual harassment is a form of sex discrimination prohibited by Title VII. 29 C.F.R. § 1604.11(a) (1985).

■ Sexual harassment can take place in two related ways: *quid pro quo* harassment or hostile environment harassment. Claims based on carried-out threats are often referred to as *quid pro quo* cases. The *quid pro quo* harassment occurs when a supervisor conditions job benefits upon the receipt of sexual favors from a subordinate, or punishes that subordinate for his/her refusal to comply with the sexual request(s). *Quid pro quo* sexual harassment requires, among other things, that the plaintiff's refusal to submit

to unwelcome sexual advances or requests for sexual favors result in tangible job detriment. *See Ellett v. Big Red Keno, Inc.*, 221 F.3d 1342 (8th Cir.2000). Therefore, a plaintiff must produce evidence showing that the alleged harassment affected tangible aspects of his or her employment.

■ On the other hand, in order to succeed under the rubric of hostile environment, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted). The Supreme Court has outlined the elements a plaintiff must meet in order to succeed in a hostile work environment claim: (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *See Faragher v. Boca Raton*, 524 U.S. 775, 787–89, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris*, 510 U.S. at 20–23, 114 S.Ct. 367; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

### 1. Employment Discrimination Under Title IX

Co-defendants' first argument for dismissal is that Plaintiff's sexual harassment

claim should have been filed under Title IX and not under Title VII. As such, Co-defendants contend that dismissal is warranted because Plaintiff's claims are not actionable under Title VII. We disagree.

Title IX provides, with certain exceptions not at issue here, that

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). At first glance, Title IX seems to forbid schools that receive federal funding from discriminating against students on the basis of sex. *Wills v. Brown Univ.*, 184 F.3d 20, 25 (1st Cir. 1999). Therefore, while Title VII prohibits the identical conduct in employment, Title IX shields students from being denied educational benefits and opportunities on the basis of gender. *See Gebser v. Lago Vista Ind. School Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)(comparing the outright prohibition of sex discrimination in employment under Title VII which is binding **for all employers** and the contractual framework under Title IX by which **the recipients of federal funds for education** promise not to discriminate on the basis of gender in exchange for the attainment of said funds). This protection includes being deprived from an educational opportunity or denied equal access to an institution's resources and activities. *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 651, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). Moreover, as in Title VII, this protection extends to sexual harassment, a form of sex discrimination. Case law has also established that, under Title IX, liability may be imposed on a federally-funded educational institution for teacher-on-student harassment as well as for student-on-student harassment. *Id.* at 654, 119 S.Ct.

1661; *Gebser*, 524 U.S. at 292, 118 S.Ct. 1989.

Notwithstanding the foregoing, Title IX also provides protection from sex discrimination in employment. For example, in *Lipsett v. University of Puerto Rico* the First Circuit Court held that a female participant of a university medical school surgical residency program could bring a cause of action under Title IX for sex discrimination suffered by her in her role as a student in the residency program and as an employee of the University. 864 F.2d 881, 897 (1st Cir.1988). The Court reasoned that since the plaintiff was both a paid employee and a student in training, it could extend "the Title VII standard to discriminatory treatment by a supervisor in this mixed employment-training context." *Id.* To this end, the U.S. Supreme Court has also held that employment discrimination falls under the sex discrimination prohibition of Title IX. *North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). Thus, in the case at bar Plaintiff **could** have brought her cause of action for sex discrimination under Title IX.

In their motion for summary judgment, Co-defendants rely on the U.S. Supreme Court decision in *North Haven* in support of their contention that Plaintiff's only cognizable cause of action would have been under Title IX (Docket # 77 at pp. 6–8). However, although, as discussed above, *North Haven* extends Title IX protection against sex discrimination for employees of educational institutions, in **no way** does this case hold that Plaintiff's sole recourse is a cause of action under Title IX. At issue in *North Haven* was the validity of the Department of Education's regulations prohibiting federally-funded education programs from discriminating on the basis of gender with respect to employment. *Id.* at 514, 102 S.Ct. 1912. After reviewing

Title IX's statutory language, its legislative and postenactment history, the U.S. Supreme Court concluded that Congress intended Title IX to cover employment discrimination. *Id.* at 520–31, 102 S.Ct. 1912. As such, the Court further concluded that Title IX proscribes employment sex discrimination in federally funded programs. *Id.* at 535–36, 102 S.Ct. 1912.

■■■ Subsequent discussions of the U.S. Supreme Court's decision in *North Haven* suggest that an employee of an educational institution may bring a private cause of action for sex discrimination/sexual harassment under Title IX or Title VII. *See e.g., Ivan v. Kent State Univ.,* 92 F.3d 1185, 1996 WL 422496, *2 (6th Cir. July 26, 1996); *Henschke v. N.Y. Hosp.-Cornell Med. Ctr.,* 821 F.Supp. 166, 172 (S.D.N.Y. 1993); *Mabry v. State Bd. of Comm. Colleges & Occupational Ed.,* 813 F.2d 311, 315–18 (10th Cir.1987). Thus, absent a decision to the contrary by the U.S. Supreme Court or the First Circuit Court, we refuse to hold that the availability of a cause of action for sex discrimination in employment under Title IX preempts a cause of action under Title VII. Instead, in keeping with the current case law, we hold that a plaintiff, employee of an educational institution, who has suffered sex discrimination in his/her employment may file a cause of action under Title VII or Title IX. *See e.g., Currie v. Group Ins. Comm.,* 290 F.3d 1, 6–7 n. 3–4 (1st Cir.2002) ("It is not unheard of for individuals to have overlapping rights, even within one Act."). In the case at bar, Plaintiff was an employee of the Department of Education and the Commonwealth of Puerto Rico. Plaintiff seeks relief under Title VII's absolute ban of sex discrimination, which is binding for all employers, regardless of whether their employer receives federal funding. Accordingly, Co-defendants Department of Education's and the Commonwealth of Puerto Rico's request for dismissal on the grounds that Plaintiff should have filed her cause of action under Title IX is **DENIED.**[3]

### 2. Student–on–Teacher Sexual Harassment Claims under Title VII and School Liability

Next, Co-defendants Department of Education and the Commonwealth of Puerto Rico posit that dismissal of Plaintiff's Title VII claim is warranted because "no cause of action for which plaintiff can obtain relief has been recognized." (Docket # 77 at p. 10). That is, Co-defendants argue that since neither the U.S. Supreme Court nor the First Circuit Court have discussed school liability for sexual harassment suffered by a teacher on account of a student, Plaintiff's cause of action under Title VII should be dismissed. Although Co-defendants are correct in that this issue has yet to be addressed by the U.S. Supreme Court and/or the First Circuit Court, we reject Co-defendants' invitation to dismiss Plaintiff's claims since a cause of action for student-on-teacher sexual harassment may be inferred from recent Title VII, Equal Protection and Title IX case law. We explain.

The facts of the case at bar pose an interesting question. Can a school be held liable for the misconduct or sexual harassment perpetrated by one of its students upon a teacher/employee of the school? Although different standards apply in the imposition of employer/school liability, the

**3.** Having denied Co-defendants' request for dismissal on the above-stated grounds and holding that Plaintiff was correct in asserting her cause of action under Title VII, there is no need to address Co-defendants' argument that Plaintiff's Title IX cause of action would have been time barred. Thus, Co-defendants' request for dismissal based on Title IX's statute of limitations is **DENIED.**

following are clear: (i) a school may be held liable for teacher-on-student harassment, *Gebser,* 524 U.S. at 292, 118 S.Ct. 1989, and for student-on-student harassment, *Davis,* 526 U.S. at 654, 119 S.Ct. 1661; and (ii) an employer may be held liable for supervisor-on-employee harassment, *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 780, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), for employee-on-employee harassment, *Lipsett,* 864 F.2d at 901, and, even, for non-employee (e.g. customer or client)-on-employee harassment. *Rodríguez–Hernández v. Miranda–Vélez,* 132 F.3d 848, 854 (1st Cir. 1998). Notwithstanding, the issue of whether a school may be held liable for student-on-teacher harassment has not been expressly resolved. We have, however, found a handful of cases which suggest that student-on-teacher harassment is cognizable under Title VII.

First, we refer to the case cited by Co-defendants in support of their request for dismissal, *Peries v. New York City Board of Education,* 2001 WL 1328921 (E.D.N.Y. August 6, 2001). The Court notes that Co-defendants' reliance on this case is misplaced. The plaintiff in *Peries* was a school teacher who filed suit against the New York Board of Education for not taking remedial action against a student who harassed him because of his race and national origin. *Id.* at *1. Plaintiff filed suit for hostile work environment under Title VII and Section 1983. The Court concluded that the plaintiff could prevail

on an action for sexual harassment against the school if he could show that a hostile environment existed and that the school board provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action. *Id.* at *6. The Court reasoned that "school administrators and school board officials have disciplinary authority that exceeds that of a classroom teacher, such as the power to suspend and take other actions not commonly carried out by individual classroom instructors." *Id.* Accordingly, the Court further concluded that summary judgment of the plaintiff's Title VII claims against the school was improper since "the question of whether school officials took appropriate remedial action is a question of fact, not law." *Id.* at *7.[4]

In further support that student-on-teacher harassment is actionable, we look to the Seventh Circuit Court's decision in *Schroeder v. Hamilton School District,* 282 F.3d 946 (7th Cir.2002) and the Eastern District Court of New York's decision in *Lovell v. Comsewogue School District,* 214 F.Supp.2d 319 (E.D.N.Y.2002). In both of these cases the plaintiffs were teachers suing their respective school districts for not taking the appropriate measures to prevent harassment from students on the basis of their sexual orientation. Although these cases were both filed under the Equal Protection clause, both Courts entertained the merits of the plaintiffs' claims. While the Court in *Schroeder* ruled that the plaintiff had failed to demonstrate that the defendants treated his

---

**4.** The Court assumes that Co-defendants' reliance on *Peries* in support of their request for dismissal was a result of the Court's holding in the second-half of the opinion. There, the Court held that since the U.S. Supreme Court nor the Second Circuit had recognized the right for teachers to be protected by their employers against harassment by their students, the individual defendants

did not violate a clearly established statutory or constitutional obligation. As such, the Court concluded that the individual defendants were entitled to qualified immunity from the plaintiff's Section 1983 claims. *Peries v. New York City Board of Education,* 2001 WL 1328921 at *8 (E.D.N.Y. August 6, 2001).

complaints of harassment differently from those of non-homosexual teachers, that defendants had intentionally discriminated against him, or acted with deliberate indifference to his complaints because of his sexuality, the Court in *Lovell* held that the plaintiff had in fact pled a cognizable cause of action under the Equal Protection clause. *Schroeder*, 282 F.3d at 956; *Lovell*, 214 F.Supp.2d at 323. Thus, both Courts, recognized that a cause of action for student-on-teacher harassment is actionable under the Equal Protection clause. Moreover, in *Schroeder*, the Seventh Circuit stated that "[w]here this a Title VII case, the defendants could be liable to Schroeder if he demonstrated that they knew he was being harassed and failed to take reasonable measures to try to prevent it." *Id.* at 956.

Lastly, in *Howard v. Board of Education of Sycamore Community Unit School District No. 427*, a plaintiff filed suit under Title IX, among other causes of action, against the school district for sexual harassment by fellow teachers and students. 893 F.Supp. 808, 812 (N.D.Ill.1995). Although the Court held that the plaintiff's Title IX claims were precluded by Title VII, it did not reject the possibility of filing a cause of action for sexual harassment against the school and its administrators for student-on-teacher sexual harassment. *Id.* at 814–15. Instead, the Court stated that "Title VII provides a comprehensive scheme for aggrieved individuals to enforce the prohibition against discrimination in employment." *Id.* (citation omitted).

▇▇▇ Having reviewed the foregoing decisions, we conclude that Plaintiff may seek redress under Title VII against Co-defendants Department of Education and the Commonwealth of Puerto Rico for the sexual harassment suffered on account of one of her students. We are aware that, though persuasive, none of the cases cited

above are binding. However, absent clear directive from the U.S. Supreme Court or the First Circuit Court, we will not limit the reach of Title VII liability by closing the door on student-on-teacher harassment. After all, Title VII seeks to eliminate all forms of sex discrimination in all work environments. In the instant case, the alleged incidents of sexual harassment were suffered in employment and, drawing all inferences in favor of Plaintiff, the School Director and/or the Discipline Committee could have reasonably exercised their authority to prevent and/or to remedy the alleged sexual harassment by disciplining, suspending, or even expelling the student perpetrating the harassment. Thus, Co-defendants Department of Education's and the Commonwealth of Puerto Rico's request for dismissal on the grounds that student-on-teacher harassment is not actionable under Title VII is **DENIED.**

**3. Co-defendants Department of Education's and the Commonwealth of Puerto Rico's Basis for Liability for Plaintiff's Title VII Sexual Harassment Claim**

Co-defendants Department of Education and the Commonwealth of Puerto Rico further argue that Plaintiff's claims under Title VII should be dismissed because a student is not a "non-employee" for which they can be held liable under Title VII and/or that Plaintiff has failed to establish that Co-defendants were negligent or failed to take reasonable corrective action (Docket # 77 at pp. 12–18). We will first discuss the applicable standard for employer liability under Title VII and then proceed to analyze whether Plaintiff has presented sufficient evidence to create a controversy as to any material fact pertaining to Co-defendants' alleged negligence.

Co-defendants contend that since the EEOC Guidelines do not include "students" as examples of "third party" or "non-employee" for which an employer may be held liable for sexual harassment under Title VII and there appears to be no binding case law that expressly categorizes students as such, Plaintiff's Title VII claim lacks merit (Docket # 77 at pp. 13–14). We beg to differ.

An employer's liability for hostile environment sexual harassment depends on the relationship between the employer and the person responsible for the sexual harassment. *See e.g. Molina Quintero v. Caribe G.E. Power Breakers, Inc.*, 234 F.Supp.2d 108, 112 (D.P.R.2002) (distinguishing the applicable standards for employer liability as a result of sexual harassment perpetrated by a supervisor *vis-a-vis* a co-worker). As the U.S. Supreme Court stated in *Burlington*, "[n]egligence sets a minimum standard for employer liability under Title VII." *Burlington*, 524 U.S. at 758, 118 S.Ct. 2257.

The basis for liability in this case is clear. An employer/school is liable "[i]f an official representing that institution knew, or in the exercise of reasonable care, should have known of the harassment's occurrence, unless that official can show that he or she took appropriate steps to halt it." *Lipsett*, 864 F.2d at 901. Specifically, and consistent with the First Circuit Court's ruling in *Lipsett*, the Court in *Peries* held that in order to prevail against the school, the plaintiff had to show that "a hostile environment existed and [ ] that the school board either provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action." *Peries*, 2001 WL 1328921, *6. In the case at bar, the applicable standard is the one utilized in customer-on-employee harassment, which has been expressly recognized by the First Circuit Court. *Rodríguez–Hernández*, 132 F.3d at 854. As

stated by the *Peries* Court "it is difficult to conceive of a test more appropriate for student-on-teacher harassment than that suggested for customer harassment." *Peries*, *6.

The EEOC Guidelines, as the name suggests, are mere guidelines pertaining to the Title VII prohibition against sex discrimination in employment. Thus, in no way can it be said that the examples included therein are an exhaustive list of the situations in which employer liability attaches for non-employee misconduct. Co-defendants have cited no legal authority in support for their proposition that student misconduct falls outside of the Title VII employer liability scope. Moreover, the Court is not persuaded by Co-defendants' argument that until the U.S. Supreme Court or the First Circuit Court rules that students may be considered "non-employees" under Title VII, schools are to be immune from all liability on that front. A cursory review of the EEOC Guidelines support this conclusion:

> An employer may also be held responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

29 C.F.R. § 1604.11(e). From the language above, it is clear that the term "non-employee," as defined in the EEOC Guidelines, does not exclude students, especially if the Court finds that a school has control and legal responsibility over student misconduct. Unnecessary restriction in the

scope of employer liability under Title VII is inappropriate absent any legal authority to that effect. Having reached this conclusion, we examine the facts of the instant case to determine whether there is evidence of school negligence justifying employer liability.

 To this end, Co-defendants solely aver that since Co-defendant García–Figueroa began working as the School Director of the Petra Román Vigo School on or about November of 2000 (Docket # 77 SUF No. 43) and Plaintiff resigned on February 16, 2001 (Docket # 77 SUF No. 13), the Department of Education "did not have enough time to take remedial action, as to start an investigation regarding the alleged sexual harassment of the student Johnny Dávila Quiñones." (Docket # 77 at p. 18). Therefore, Co-defendants argue that a period of two (2) months is not sufficient to take remedial action. Thus, Co-defendants conclude that Plaintiff has failed to provide sufficient proof of their alleged negligence and that summary disposition is warranted. We disagree.

It is undisputed that, at some point during her employment at the Petra Román Vigo School, Plaintiff met with the Discipline Committee in relation to the conduct of Johnny Dávila and informed them of his misconduct (Docket # 77 SUF No. 44). There is a factual dispute as to whether the Disciplinary Committee took any remedial action or whether they told Plaintiff that she had to deal with the problem by herself (Docket # 102 SCF Nos. 28, 31 & 45). Furthermore, Plaintiff contends, and Co-defendants do not dispute, that she performed various referrals to the school social worker in order to deal with the student's misconduct and that Co-defendant García–Figueroa had knowledge of the sexual harassment that Plaintiff suffered at the hands of Johnny Dávila (Docket # 102 SCF Nos. 28, 42 & 45). Lastly, Co-defendants have provided no evidence to dispute Plaintiff's assertions that they knew of the ongoing sexual harassment perpetrated by Johnny Dávila and that they failed to take any remedial action. In fact, Co-defendants do not even allege that they attempted to take any corrective actions, they simply rely on the fact that Plaintiff resigned only two (2) months after informing them of the problem. Whether two (2) months is enough time to take an appropriate corrective action against sexual harassment in the work place is an issue of fact which is reserved for the jury. Accordingly, we find that there are issues of material facts in dispute and that summary disposition of Plaintiff's Title VII claims against Co-defendants Department of Education and the Commonwealth of Puerto Rico is improper. Thus, Co-defendants request for summary disposition on the above-stated grounds is **DENIED.**

## II. Retaliation under Title VII

 To establish a *prima facie* showing of reprisal, Plaintiff must allege and prove that:

1. She engaged in a protected activity;
2. An adverse employment action occurred; and
3. A causal link existed between the protected activity and the adverse employment action.

*Dressler v. Daniel,* 315 F.3d 75, 78 (1st Cir.2003); *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996); *Acevedo Vargas v. Colón,* 68 F.Supp.2d 80, 91 (D.P.R. 1999). An employee has engaged in activity protected by Title VII if he/she has either (1) "opposed any practice made an unlawful employment practice" by Title VII; or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). Plaintiff meets this prong as she reported the alleged sexual harassment. *Hoeppner*

*v. Crotched Mount. Rehab. Ctr., Inc.,* 31 F.3d 9, 14 (1st Cir.1994) (citation omitted).

Plaintiff alleges that as a result of reporting the sexual harassment to Ms. Evelyn Matos, Supervisor of the School District of Carolina, and Co-defendant García–Figueroa, she received negative evaluations of her work performance (Docket # 102, Ex. 2 at p. 49). However, Plaintiff provides no further evidence in support of this contention. Plaintiff solely relies on her testimony at her deposition. Without more, these unsupported allegations are insufficient to establish *prima facie* that Co-defendants retaliated against Plaintiff.

■■■ It is uncontested that Plaintiff engaged in protected activity by reporting to her supervisors that she was being harassed by one of her students. It is also uncontested that an adverse employment action occurred since Plaintiff apparently received negative evaluations of her work performance. Co-defendants do dispute, however, whether the actions taken against Plaintiff, below satisfactory evaluations, constituted adverse employment actions within the meaning of Title VII. Whether or not the earlier actions amounted to the level of adverse actions is important in the present case as they bear on Plaintiff's ability to establish the third element of her *prima facie* claim, a causal link between the protected activity and the adverse employment action(s) taken against her. Although at this stage all inferences are drawn in favor of Plaintiff, Plaintiff cannot survive summary judgment on a retaliation claim with " 'unsupported allegations and speculations,' but

rather must 'point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting testimony—giving rise to an inference of discriminatory animus.' " *Hoeppner,* 31 F.3d at 14 (*quoting Lipsett,* 864 F.2d at 895). Plaintiff points to no such facts from which an inference of causal connection can be drawn. Thus, we hold that Plaintiff has failed to meet the third prong of the *prima facie* case of retaliation under Title VII. Absent a causal connection between the alleged adverse employment action and the protected activity, Co-defendants Department of Education's and Commonwealth of Puerto Rico's request for dismissal of Plaintiff's retaliation claim under Title VII is **GRANTED.** Accordingly, Plaintiff's retaliation claim under Title VII will be **DISMISSED WITH PREJUDICE.**[5]

### III. Due Process

In her complaint, Plaintiff claimed to have a property interest in her continued employment and that she was divested of her entitlement as a result of a continuous pattern of sexual harassment on account of her student, Johnny Dávila. In their motion for summary judgment, Co-defendants aver that Plaintiff did not have a property interest in her position since she was hired as a transitory employee (Docket # 77 at pp. 18–20). Plaintiff counters by simply stating that her transitory position as school teacher at the Petra Román Vigo School was from September 29, 2000 until May 31, 2001 (Docket # 102 SCF No. 3 & Docket # 77, Ex. 2) and that she was forced to resign on February 2001 (Docket

**5.** Having held that Plaintiff failed to establish a *prima facie* claim of retaliation under Title VII against Co-defendants Department of Education and the Commonwealth of Puerto Rico, the Court finds that Plaintiff's retaliation claim against Co-defendant García–Figueroa in her official capacity should suffer

the same fate. Thus, Plaintiff is hereby **ORDERED to show cause by July 18, 2005** why its claim for retaliation under Title VII against Co-defendant García–Figuera should not be dismissed with prejudice. Failure to comply will result in the dismissal with prejudice of this claim.

# 102 SCF No. 10). These facts remain undisputed. Accordingly, when Plaintiff resigned she still had three and a half months left in her contract.

▉ Co-defendants do not argue that Plaintiff's resignation was not a constructive discharge. Thus, drawing all inferences in favor of Plaintiff, we find that having had to resign prior to the termination of her contract could constitute a violation of Plaintiff's Due Process rights. Plaintiff has a proprietary interest in the completion of her contract term. *Santana v. Calderón*, 342 F.3d 18, 24 ("In order to establish a constitutionally-protected property interest a plaintiff must demonstrate that she has a legally recognized expectation that she will retain her position. A legitimate expectation of continued employment may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace.") (citation omitted). Accordingly, Co-defendants Department of Education's and the Commonwealth of Puerto Rico's request for summary judgment of Plaintiff's Due Process claim is **DENIED**.

## B. Co-defendant García–Figueroa's Motion for Summary Judgment

Co-defendant García–Figueroa argues that Plaintiff's Section 1983 claim against her in her individual capacity should be dismissed since: (i) Plaintiff's allegations are insufficient to state a claim under Section 1983, or, in the alternative, (ii) she is entitled to qualified immunity in her individual capacity (Docket # 89).[6]

6. In her motion for summary judgment, Co-defendant García–Figueroa states that only Plaintiff's Section 1983 claim against her, in her personal capacity, is pending. However, after carefully reviewing the complaint and the case record, the Court notes that Co-defendant García–Figueroa's statement is inaccurate. Pending against Co-defendant García–Figueroa, in her personal capacity, are

## I. Section 1983

▉ Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *See Graham v. M.S. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989); *Saugus v. Voutour*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985).

▉ Second, a plaintiff must show that the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt*, 451 U.S. at 535, 101 S.Ct. 1908; *Gutiérrez–Rodríguez*, 882 F.2d at 559. This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. *Gutiérrez–Rodríguez*, 882 F.2d at 559; *Voutour*, 761 F.2d at 819. In turn, this second element of causal connection requires that the plaintiff establish: (1) for each defendant, that the defendant's own actions deprived

Plaintiff's Section 1983 claims and her supplemental law claims. Also pending against Co-defendant García–Figueroa, in her official capacity, are Plaintiff's Section 1983 claims for equitable relief, sexual harassment and retaliation claims under Title VII and her supplemental law claims. (*See* Dockets ## 2, 42 & 79).

the plaintiff of his/her protected rights, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gutiérrez–Rodríguez*, 882 F.2d at 562; *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989); and (2) that the defendant's conduct was intentional, *Simmons v. Dickhaut*, 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. *See Gutiérrez–Rodríguez*, 882 F.2d at 562.

In her motion for summary judgment, Co-defendant García–Figueroa has merely recited the legal standard applicable to Section 1983 claims (Docket # 89 at pp. 6–7). Co-defendant García–Figueroa has utterly failed to raise any arguments nor presented any evidence in support of her request for dismissal of Plaintiff's Section 1983 claims. Accordingly, the Court will not entertain said request. Co-defendant García–Figueroa's request for dismissal of Plaintiff's Section 1983 claim for failure to state a claim is **DENIED.**

## II. Qualified Immunity

Qualified immunity constitutes a right not to stand trial or face the burdens of litigation. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The procedures regarding qualified immunity allow for judicial review, *via* certiorari, on the qualified immunity issue. *Id.* at 207, 121 S.Ct. 2151. Thus, in order to avoid subjecting state officials to unnecessary and burdensome discovery or trial proceedings, district courts and courts of appeal should rule on the qualified immunity issue from the beginning, focusing on the characterization of the constitutional right in controversy and deciding, whether from the facts alleged in the complaint, a constitutional violation could be found. *See Id.* at 201, 121 S.Ct. 2151; *Judge v. City of Lowell*, 160 F.3d 67, 73 (1st Cir.1998).

A defendant can establish a qualified immunity defense in one of three ways:

First, the defense should be sustained if the court finds that it was not clear at the time of the official acts that the interest asserted by plaintiff was protected by a federal statute or the Constitution. Second, even if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to immunity as a matter of law, if it was not clear at the time of the acts at issue that an exception did not permit those acts. Third, even if the contours of the plaintiffs federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if, it was objectively reasonable for him to believe that his acts did not violate those rights.

*Walsh v. Franco*, 849 F.2d 66, 69 (2nd Cir.1988) (*citing Robison v. Via*, 821 F.2d 913, 920–921 (2nd Cir.1987)). Thus, the qualified immunity inquiry is composed of a three-prong test: (1) does the complaint state a claim for relief of a constitutional right?; (2) if it does, was the constitutional right clearly established at the time of the facts alleged in the complaint?; and (3) was it objectively reasonable for the officer to believe his actions did not violate the claimant's federally protected right?

Co-defendant García–Figueroa argues that Plaintiff failed to prove that she had a constitutionally protected right since she did not file an administrative complaint against Johnny Dávila for the alleged sexual harassment and that, as such, Co-defendant García–Figueroa could not be expected to act on her behalf (Docket # 89 at p. 13). Plaintiff counters by arguing that Co-defendant García–Figuera had personal knowledge of the sexual harassment and

did nothing to correct the situation (Docket # 107 at p. 16).

In the instant case, Plaintiff contends, and Co-defendant García–Figueroa does not dispute, that Co-defendant was informed of the sexual harassment suffered by Plaintiff prior to Plaintiff's resignation (Docket # 107 Separate SCF No. 1). Plaintiff has also provided evidence that Co-defendant García–Figueroa's duties included reprimanding students and that said Co-defendant failed to individually reprimand Johnny Dávila for his misconduct (Docket # 102, Ex. 7 at pp. 58 & 65). With these contested facts in mind, we find that Co-defendant is not entitled to qualified immunity: (i) Plaintiff has alleged a constitutionally protected right to be free from sexual harassment; (ii) Plaintiff has also, at a minimum, controverted Co-defendant García–Figueroa's allegations that her right to be free from sexual harassment was clearly established at the time of the facts alleged in the complaint; and (iii) Plaintiff has presented sufficient evidence to create a material issue of fact as to whether an objectively reasonable government actor, performing discretionary functions, would have understood her conduct to violate Plaintiff's rights under Title VII. Therefore, Co-defendant García–Figueroa's motion for summary judgment is **DENIED.**

## Conclusion

For the reasons set herein, Plaintiff's retaliation claim under Title VII against Co-defendants Department of Education and the Commonwealth of Puerto Rico are hereby **DISMISSED WITH PREJUDICE.** Pending before the Court are the following claims: (i) Title VII sexual harassment claim against Co-defendants Department of Education, the Commonwealth of Puerto Rico and García–Figueroa, in her official capacity; (ii) Title VII retaliation claim against Co-defen-

dant García–Figueroa in her ·official capacity; (iii) Section 1983 claims against Co-defendant García–Figueroa in her personal capacity; (iv) Section 1983 claims for equitable relief against Co-defendants Department of Education, the Commonwealth of Puerto Rico and García–Figueroa, in her official capacity, and (v) supplemental law claims against all Defendants. Finally, the parties are **ORDERED** to file their Joint Pretrial Memorandum by **July 18, 2005.** A Pretrial and Settlement Conference will be scheduled for **July 20, 2005 at 10:00 a.m.**

**SO ORDERED.**